## AMERICAN SURETY CO. OF NEW YORK v. STUART.

### No. 14244.

Court of Civil Appeals of Texas.
Fort Worth.

May 23, 1941.

Lloyd E. Price and Hamilton Rogers, both of Fort Worth, for appellant.

R. V. Nichols, of Fort Worth, for appellee.

McDONALD, Chief Justice.

Bigley Electric Company, as contractor, undertook the construction of certain rural electric lines. Appellant, American Surety Company of New York, executed a performance bond for the contractor, guaranteeing, among other things, that the contractor would "promptly make payment to all persons supplying labor and materials for use in the construction of the project contemplated in the Construction Contract." The bond also recites: "This bond is made for the benefit of all persons, firms and corporations who or which may furnish any materials or perform any labor for or on account of the construction to be performed under the Construction Contract, and they, and each of them, are hereby made obligees hereunder with the same force and effect as if their own proper names were written herein as such, and they and each of them may sue hereon."

The contractor defaulted in the performance of the contract. Appellee R. A. Stuart, a practicing attorney at law, brought this suit against the surety company, alleging that he had performed certain legal services for the contractor, for which the contractor had failed to pay. Appellee recovered judgment in the trial court for $300, the amount sued for, and appellant has appealed.

The professional services rendered by appellee consisted of four items: (a) When the contractor, a resident of another state, arrived in Texas, it became apparent that the use of certain motor equipment owned by the contractor would require certain permits and licenses. Appellee was consulted by the contractor, and made the necessary arrangements with the public authorities for the required licenses and permits pertaining to such equipment. (b) Appellee represented the contractor in making banking arrangements for the handling of payroll accounts. (c) Appellee represented the contractor in negotiating a settlement of an indebtedness against one of the pieces of motor equipment owned by the contractor. (d) Appellee represented the contractor in a labor dispute which arose during the construction of the work. According to appellee, he and the contractor agreed upon a fee of $300 to cover all of the above mentioned services.

Both appellant and appellee advise us that they have been unable to find any decided cases involving liability of a bonding company in a case like the present one. Nor have we been able to find any.

We are convinced from reading the authorities that professional services rendered by an attorney would not be classed as "labor" within the meaning of that term as used in the mechanic's lien statutes of this state. See the following cases for discussions of the meaning of the term: Beakley v. Lind, Tex.Civ.App., 32 S.W.2d 671, manager of a farm held not to be a farm hand or common laborer. Ft. Worth & D. C. Ry. Co. v. Read Bros. & Montgomery, Tex.Civ.App., 140 S.W. 111, writ of error refused, subcontractor held not to be a laborer. Jackson v. Downs, Tex.Civ. App., 149 S.W. 286, one who contracted to haul logs held to be a contractor, not a laborer. Lindale Brick Co. v. Smith, 54 Tex.Civ.App. 297, 118 S.W. 568, writ of error denied, superintendent of brick plant held not to be a laborer. Dunn v. Hankins, Tex.Civ.App., 127 S.W.2d 983, one who contracted to cut and haul spinach to a canning factory held not to be a laborer.

In 24 Words & Phrases, Perm.Ed., page 16, it is said: "The word 'labor,' in legal parlance, has a well-defined, understood, and accepted meaning. It implies continued exertion of the more onerous and inferior kind, usually and chiefly consisting in the protracted exertion of muscular force. 'Labor' may be business, but it is not necessarily so, and business is not always labor. In legal significance labor implies toil; exertion producing weariness; manual exertion of a toilsome nature."

In interpreting the meaning of the term "labor performed", as used in the venue statute, Art. 2390, § 4, Revised Civil Statutes, it is held that the term "labor" does not include the professional services rendered by a real estate broker. Felton v. Johnson, 112 Tex. 412, 247 S.W. 837;

Welsh v. Chapman, Tex.Civ.App., 87 S.W. 2d 293. The Felton case cites with approval the old case of Weymouth v. Sanborn, 43 N.H. 171, 80 Am.Dec. 144. In the latter case a physician sought to levy execution upon the homestead of the defendant to satisfy a claim for professional services. Under the laws of New Hampshire then in force the homestead exemption did not extend to "any claim for labor less than one hundred dollars". The question for decision by the court was whether the services of the physician constituted a "claim for labor". Holding that it did not, the court in part said:

"The common and ordinary signification of the term labor accords, we think, with the definition given by the best lexicographers, and is understood to be physical toil. And the term laborer is ordinarily employed to denote one who subsists by physical toil, in distinction from one who subsists by professional skill. The exception of claims for labor would not, therefore, ordinarily be understood to embrace the services of the clergyman, physician, lawyer, commission merchant, or salaried officer, agent, railroad and other contractors, but would be confined to claims arising out of services where physical toil was the main ingredient, although directed and made more valuable by mechanical skill."

The above paragraph was quoted by the court in the Felton case, and must therefore be considered as reflecting the trend of judicial thought in Texas on this subject.

In several jurisdictions it has been held that statutes giving a lien or preference in the event of insolvency to employees or laborers do not include claims for professional services rendered by attorneys. Gay v. Hudson River Electric Power Co., C.C., 178 F. 499; People v. E. Remington & Sons, 45 Hun 329, 10 N.Y.St.R. 310, affirmed without written opinion in 109 N. Y. 631, 16 N.E. 680; Latta v. Lonsdale, 8 Cir., 107 F. 585, 52 L.R.A. 479; Lewis v. Fisher, 80 Md. 139, 30 A. 608, 26 L.R.A. 278, 45 Am.St.Rep. ·327; Raleigh County Constr. Co. v. Amere Gas Utilities Co., 110 W. Va. 291, 158 S.E. 161. In the last mentioned case a recovery was allowed on the ground that the claimants, although

they were lawyers, performed work which was not strictly professional services, but work which could have been performed by anyone. In the case on appeal appellee appears without doubt to be seeking a recovery for professional services.

Appellee offers the suggestion that the project in question was of such a complicated nature that it could reasonably have been contemplated that the contractor would find it necessary to obtain the professional services of an attorney in the performance of the contract. While there might be a situation where the services of an attorney could properly be considered as covered by a bond like the one in the present case, we do not believe such a situation is presented here.

■■■ The contractor must furnish his own tools and equipment for doing the work, and the bonding company is not liable for debts incurred therefor. B. F. & C. M. Davis Co. v. Callaghan Const. Co., Tex.Com.App., 298 S.W. 273, and cases therein cited. In meeting the requirement that it furnish its own equipment, the contractor employed appellee to obtain the necessary permits and licenses for its use, and to negotiate a settlement concerning a part of the purchase price of some of it. Clearly this was not labor covered by the bond. Appellee represented the contractor in establishing a banking connection. This was simply a part of the preparation made by the contractor to perform the contract. The only other service alleged to have been rendered by appellee was in connection with the settlement of a dispute between the contractor and some of the laborers on the job. We do not believe that this service, even under the liberal view suggested by appellee, could properly be considered as labor contemplated by the construction contract.

Apropos of the current interest of the bench and bar in speeding up the trial and appeal of cases, we observe that the present cause was filed in the court below on July 17th, 1940, was tried on October 12th, 1940, and is being decided by this court on May 23rd, 1941, ten months after it was filed in the trial court.

The judgment of the trial court is reversed, and judgment is here rendered for appellant.